**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Charles Wesley ARLT, Defendant–Appellant, Cross–Appellee.**

Nos. 92–50467, 92–50517.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1994.

Decided Dec. 1, 1994.

See also 33 F.3d 1210.

Gail Ivens, Ivens & Weston, Pasadena, CA, for defendant-appellant-cross-appellee.

* The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of

Dean G. Dunlavey, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee-cross-appellant.

Before: POOLE, REINHARDT, Circuit Judges, and TANNER,* District Judge.

REINHARDT, Circuit Judge:

*BACKGROUND*

Charley Wesley Arlt was convicted of conspiring to manufacture methamphetamine and money laundering. He appeals his conviction on various grounds. Here we address only Arlt's self-representation claim. In a memorandum disposition accompanying this opinion, we deal with Arlt's other claims, as well as those of his codefendants.

During a pretrial hearing, Arlt requested that he be permitted to represent himself at trial. After the district judge extensively discussed the disadvantages of self-representation, Arlt repeated his request. Before ruling on the motion, the district judge required Arlt to consult with a court-appointed attorney. After the consultation, Arlt again stated that he wished to proceed pro se. Despite the clarity and persistence with which Arlt made his request, the district judge denied Arlt's motion on the ground that a poorly formulated petition filed by Arlt indicated that he was not competent to represent himself. Over Arlt's objection, the judge then appointed an attorney to represent him.

Even after the judge appointed counsel, Arlt renewed his request. Indeed, Arlt stated that he was *demanding* to represent himself. The judge brushed aside the demand, saying, "[y]ou can demand anything you want, but ... I find that you're incompetent to represent yourself."

Two months later, Arlt made a motion to substitute counsel to replace the attorney appointed by the judge over his objections with an attorney of his own choosing. The

Washington, sitting by designation.

district judge held a hearing and granted the motion. At the beginning of the hearing, the judge again stated that the petition Arlt had previously filed demonstrated that he was not competent to represent himself. Later in the same hearing, the government attorney asked the judge to inquire of Arlt whether, by asking for a different counsel, Arlt was withdrawing his request for self-representation. The judge refused. Instead, he ruled that Arlt had already "rendered moot" his earlier request. When the government repeated the request, the district judge again refused to make the inquiry. In explaining his refusal, the district judge stated for the fourth time in two pretrial hearings that he would not allow Arlt to proceed pro se. He further explained that no inquiry was necessary because Arlt had *already* waived his right to represent himself merely by filing the motion to substitute counsel. Neither Arlt nor his attorney took part in the discussion.

Arlt appeals, claiming that the district judge erred in denying his request for self-representation and in finding that he had waived his request by making a motion for substitution of counsel. We agree.

*ANALYSIS*

A. *Competency to Elect Self-Representation*

■ The district judge found that Arlt was not competent to choose to proceed pro se because he believed that Arlt's filing of a rambling and illogical petition that was without legal basis or merit demonstrated that Arlt could not represent himself competently. In denying Arlt's request that he be permitted to represent himself on this ground, the district judge erred as a matter of law. *See Godinez v. Moran,* — U.S. —, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

In *Godinez,* the Supreme Court rejected "the notion that competence . . . to waive the right to counsel must be measured by a standard that is higher than (or even differ-

ent from) the *Dusky* standard." *Godinez,* — U.S. at —, 113 S.Ct. at 2686. The *Dusky* standard for measuring a defendant's competency to stand trial focuses upon whether "the defendant has a 'rational understanding' of the proceedings." *Id.* at —, 113 S.Ct. at 2686; *see also Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam).

■ Indeed, the Supreme Court's decision in *Godinez* explicitly forbids any attempt to measure a defendant's competency to waive the right to counsel by evaluating his ability to represent himself. The Court notes that "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself." *Godinez,* — U.S. at —, 113 S.Ct. at 2687. It adds that " 'technical legal knowledge' is 'not relevant' to the determination whether [a defendant] is competent to waive his right to counsel." *Id.* (quoting *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)); *see also Peters v. Gunn,* 33 F.3d 1190, 1192 (9th Cir.1994).

■ If Arlt was competent to stand trial, he was competent to choose to proceed pro se. The filing of meritless motions without a logical or legal foundation does not in itself justify the denial of a defendant's Sixth Amendment right to represent himself. We have previously noted that "the defendant['s] constitutional right of self-representation may not be abrogated because [he] . . . ma[de] vague and poorly formulated motions." *United States v. Flewitt,* 874 F.2d 669, 673 (9th Cir.1989). Here, as in *Flewitt,* the motion demonstrated only a lack of legal competence, not an impairment of the defendant's ability to comprehend the nature of the proceedings. Thus, the record does not support the district court's finding that Arlt was not competent to represent himself.[1]

---

1. We note that this is a case involving only the issue of competency. There is no contention that Arlt sought deliberately to disrupt the proceedings or that he was unwilling to "abide by the rules of procedure and courtroom protocol." *McKaskle v. Wiggins,* 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122 (1984). As we recently noted, "*McKaskle* cannot be interpreted to require that defendants be able to do a competent job at representing themselves." *Peters v. Gunn,* 33 F.3d 1190, 1192 (9th Cir.1994).

## B. The Validity of Arlt's Waiver

Given that Arlt was competent to represent himself, his decision to waive his right to counsel was valid if his request was timely, not for the purposes of delay, unequivocal, and knowing and intelligent. *United States v. Schaff,* 948 F.2d 501, 503 (9th Cir.1991).

### 1. The Request Was Timely and Not for the Purposes of Delay

Arlt's request, filed six months before trial, was clearly timely. "A motion to proceed pro se is timely if made before the jury is impaneled, unless it is shown to be a tactic to secure delay." *Flewitt,* 874 F.2d at 679; *see also Schaff,* 948 F.2d at 503.

Arlt's request was not made for the purpose of delay. Nothing in the record suggests the contrary. Indeed, Arlt stated that he would accept a court-appointed attorney as an advisor to assist him with his motions and instructions even though such a concession was not required of him; in doing so, Arlt indicated a willingness to facilitate the trial process.[2]

### 2. Arlt's Request Was Unequivocal

■ In addition, Arlt's request to proceed without counsel was unequivocal. A defendant must make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself. *Adams v. Carroll,* 875 F.2d 1441, 1444 (9th Cir.1989). This requirement protects against two unacceptable occurrences: an inadvertent waiver of the right to counsel by a defendant's "occasional musings on the benefits of self-representation" and manipulation by the defendant of the mutually exclusive rights to counsel and self-representation. *Id.*

The trial record clearly demonstrates that Arlt did not make the request thoughtlessly or as a "musing." Prior to his announcement, he explained his intentions to his attorney, whose partner attempted to dissuade him from such a course. At the hearing, the district judge lectured Arlt on the disadvantages of self-representation. Further, the judge ordered a meeting between Arlt and a court-appointed attorney. Throughout these events, Arlt persisted in seeking the right to represent himself. Even when the judge had categorically denied his motion and appointed counsel for him, Arlt nevertheless repeated his request by noting that he was *demanding* the right. The clarity and forcefulness of Arlt's request demonstrates that he unequivocally articulated his decision to proceed pro se. *See Adams,* 875 F.2d at 1445 (noting that a defendant's choice was unequivocal because he "took one position and stuck to it").

There is also no evidence to indicate that Arlt was attempting to manipulate the proceedings. He never attempted to use vague language that might lay the groundwork for a future appeal. Indeed, had the district judge granted Arlt's request, the explicit and persistent manner in which Arlt made his demand would have prevented him from pursuing a claim of inadequate waiver on appeal. Thus, in the case at hand, the defendant made the choice required by *Adams,* but his choice was overridden by the district court.

The government argues that Arlt's conduct during a later hearing demonstrated equivocation and that he was therefore under an obligation to renew his motion for self-representation. First, it asserts that we should find that Arlt abandoned his desire to represent himself, or at least created ambiguity on that point, because he made a motion to substitute counsel. As we discuss in greater detail below, the fact that Arlt made a motion to substitute counsel provided absolutely no basis for a conclusion that he no longer wished to represent himself. Nor did his

---

2. The judge again commented at the second pretrial hearing, two months after Arlt's request to proceed pro se, upon Arlt's filing of the meritless motion discussed above. *See supra* pp. 518–19. The judge said that the motion was filed to harass both the prosecution and defense. Even if the district judge's comment were supported by the record, the filing of the motion constituted an insufficient justification for denying the defendant's right to represent himself. In *Flewitt,* we noted that "the defendant['s] constitutional right to self-representation may not be abrogated because [he was] uncooperative ... in making vague and poorly formulated motions." *Flewitt,* 874 F.2d at 673.

filing of the motion give rise to any ambiguity with respect to his position on that point. Consequently, Arlt was under no obligation to renew his request to represent himself. *See infra* pp. 522–24.

The government also asserts that an ambiguity was created by Arlt's failure to register an objection after the court ruled that by making the motion to substitute counsel he had waived his right to self-representation. The government's argument is without merit. Arlt had no obligation to announce that he objected to the court's erroneous ruling. His silence following the ruling does not in any way indicate equivocation on his part, absent some affirmative evidence in the record that he had changed his mind about self-representation. The district judge's ruling concerned the consequences, not the purpose, of Arlt's motion to substitute counsel. The judge never made a finding that Arlt did not desire to proceed pro se. He simply announced an erroneous ruling of law: that stating a preference for representation by one lawyer rather than another serves to waive one's right to self-representation. Anything Arlt could have said about his wish to proceed pro se at that point would have been unavailing. The judge had just declared for the fourth time that he was not competent. Under these circumstances, Arlt's failure to object hardly constituted evidence of equivocation.

### 3. *Knowing and Intelligent Waiver*

Finally, Arlt's waiver of his right to counsel was knowing and intelligent. This court has articulated the standard for determining whether a defendant's decision is knowing and intelligent in various ways. For example, we have discussed the need for the accused to "appreciate[ ] . . . lawyer's superior ability to perform the [tasks associated with trial]" as well as the requirement that "the defendant . . . be expressly made aware of the risk and consequences of his waiver of counsel." *United States v. Kimmel*, 672 F.2d

720, 721, 728 (9th Cir.1982). We have noted that a criminal defendant should be aware of "the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation." *United States v. Balough*, 820 F.2d 1485, 1487 (9th Cir.1987). We have also said that a district court must "assure itself that the defendant understands the charges and the manner in which an attorney can be of assistance." *United States v. Gillings*, 568 F.2d 1307, 1308–09 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978).

■ Although we have declined to provide a specific formula for the district judge's inquiry, *Gillings*, 568 F.2d at 1308,[3] a useful summary of these requirements is provided in *United States v. Mohawk*, 20 F.3d 1480 (1994):

> In particular, we require proof that the defendant understood his or her constitutional right to have a lawyer perform certain core functions, and that he or she appreciated the possible consequences of mishandling these core functions and the lawyer's superior ability to handle them.

*Mohawk*, 20 F.3d at 1484 (internal quotation omitted). Similarly, the Supreme Court has distilled these standards into the requirement that the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Adams v. United States*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

■ We approach the question of whether Arlt's waiver was knowing and intelligent with caution, recognizing the serious nature of the inquiry and the Supreme Court's admonition that "courts indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct.

---

**3.** Indeed, although this court has noted its preference that the district judge discuss the decision with the defendant in open court, if there is no specific inquiry on the record the determination of a knowing and intelligent waiver may be based upon the "particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Balough*, 820 F.2d at 1488. However, it is a rare case in which we will find that the defendant knowingly and intelligently waived his right to counsel without an explicit discussion of the critical factors with the district judge in open court.

1232, 1242, 51 L.Ed.2d 424 (1977). We note, however, that a determination that Arlt did not knowingly and intelligently waive his right to counsel would not benefit the government in this case. If a defendant seeks to represent himself and the court fails to explain the consequences of such a decision to him, the government is not entitled to an affirmance of the conviction it subsequently obtains. To the contrary, the defendant is entitled to a reversal and an opportunity to make an informed and knowing choice.

In any event, in the case before us, Arlt's decision to represent himself was knowing and intelligent. At least two attorneys discussed the dangers of self-representation with him. First, his counsel's partner attempted to dissuade him from making such a decision before Arlt had even raised the issue with the district judge. Second, a court-appointed attorney consulted with Arlt after he made the request for the first time, but before the judge ruled on it. This consultation included a discussion of the importance of having an attorney's assistance in making motions and proposing jury instructions. Nevertheless, Arlt persisted in making his request.

More important, the district judge engaged Arlt in an extensive discussion of the dangers of self-representation, the complicated nature of conspiracy trials, and the benefits of counsel before agreeing to rule on his motion to represent himself. *See Gillings,* 568 F.2d at 1309 (waiver of counsel is effective because of the defendant's discussion with the attorney and the district judge). The district judge vigorously warned Arlt about the dangers of self-representation, including limited access to investigators, law books, and other legal resources. He firmly stated that he would require Arlt to meet the standards of a practicing attorney in dealing with courtroom procedures and in conducting himself in the courtroom. He specifically informed Arlt that he would be required to prepare jury instructions and warned him of the complicated nature of those instructions in a conspiracy case. He also questioned Arlt's ability to act as his own attorney. Indeed, the district judge explicitly told Arlt that the pro se motion he had filed made

clear that his legal skills were wholly inadequate, and he stated quite plainly that Arlt would not be successful at trial without an attorney to represent him.

There is no indication on the record that Arlt was not capable of comprehending the judge's explanations or that he did not actually understand the consequences of his decision. Despite the government's assertions to the contrary, the mere fact that Arlt did not heed the district judge's warning does not indicate that his waiver was uninformed or unintelligent, particularly since Arlt expressly indicated that he understood the district judge's warnings and was not deterred by them. In short, it is abundantly clear that Arlt "appreciated the possible consequences of mishandling these core functions and the lawyer's superior ability to handle them," *Mohawk,* 20 F.3d at 1484, and that "'he [knew] what he [was] doing and his choice [was] made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams,* 317 U.S. at 279, 63 S.Ct. at 241–42). Accordingly, the district judge should have permitted Arlt to exercise his right to waive counsel and to represent himself.

#### 4. *The Government's Response*

The government asserts that the district judge made a factual finding that Arlt did not knowingly waive his right to self-representation. It contends that the district judge's finding that Arlt was incompetent to represent himself represents "inapt phrasing" for a finding that Arlt did not knowingly and intelligently decide to represent himself. Indeed, the government goes to great lengths to convince us that Arlt's unmeritorious and illogical motion "reflected more than lack of legal skills; it demonstrated a woefully insufficient understanding of the charges and the risk of self-representation—understandings [sic] that he was required to possess in order to validly waive his right to counsel." The government is wrong on all counts.

We need not decide here whether the standard for measuring a defendant's competency to choose self-representation and the standard for determining whether a defendant's waiver was knowing and intelligent—that is, whether the defendant actually understood

the judge's warnings about the dangers of self-representation—are similar. *See Godinez v. Moran,* —— U.S. ——, —— n. 12, 113 S.Ct. 2680, 2687 n. 12, 125 L.Ed.2d 321 (1993) (distinguishing the two inquiries and not addressing the question). Here, the record makes it quite clear that the district judge found that Arlt was not *competent* to choose to represent himself, not that his waiver was unknowing or intelligent. Accordingly, we reject the government's attempt to mischaracterize the facts in this way. Moreover, as we indicated earlier, whatever the standard may be, Arlt's waiver in this case was both knowing and intelligent.

### C. *Subsequent Waiver of the Right to Self-Representation*

The district court held that Arlt waived his right to self-representation by making a motion to substitute an attorney of his own choosing for the attorney appointed over his objections by the district judge. The government argues in the alternative that Arlt waived his right because he did not renew his motion to proceed pro se when the district judge was discussing the motion to substitute counsel. Neither of these contentions has any merit.

#### 1. *Motion to Substitute Counsel*

■ The district judge held that Arlt abandoned his request to proceed pro se by filing a motion to substitute counsel. His conclusion is erroneous as a matter of law. Once Arlt's request to proceed pro se had been denied, his decision to seek representation by counsel of his own choosing rather than counsel chosen by the district judge did not in any way imply that he had abandoned his request to proceed pro se. The district judge had made absolutely clear that Arlt's first choice, self-representation, was not an available option. Arlt therefore had two remaining alternatives. He could be represented by the lawyer appointed by the district judge, or he could be represented by the lawyer that he preferred. His decision to substitute an attorney of his own choosing

for the one selected by the district judge in no way indicated that his strong and vociferously expressed desire for self-representation had changed. Thus, we reject the district court's holding that a defendant's decision to replace court-appointed counsel with an attorney of his own choosing constitutes a waiver of his self-representation request.[4]

#### 2. *The Failure to Renew the Motion to Proceed Pro Se*

■ The government argues in the alternative that Arlt abandoned his request to proceed pro se because he did not renew his motion to represent himself at the time the district court was considering the motion to substitute counsel. The government cites four cases in support of its argument. None of them supports its assertion.

First, the government argues that *Jackson v. Ylst,* 921 F.2d 882 (9th Cir.1990), demonstrates that Arlt waived his right to self-representation by failing to renew his motion to proceed pro se. The government's novel interpretation of *Jackson* is misleading at best. In *Jackson,* the court found that, unlike Arlt, the defendant had *not* made a timely or unequivocal request for self-representation. *Id.* at 887–88. It denied Jackson's self-representation claim on the ground that his request represented an "emotional response when disappointed by the trial court's denial of his motion for substitute counsel." *Id.* at 888–89. In passing, the court mentioned that, at a later hearing, the defendant did not object to the presence of his appointed counsel or renew his request to proceed pro se. *Id.* at 889. The court did not rest its holding, as the government requests us to do here, on the fact that the defendant failed to renew his request at a subsequent hearing. Indeed, the only reason the court found this information to be relevant to the defendant's state of mind at the initial hearing was because the defendant had not on that earlier occasion stated his preference clearly.

---

**4.** Of course, if the district judge had granted Arlt's petition to proceed pro se and Arlt had subsequently demanded a court-appointed counsel to represent him, it is clear that he would

then have waived his right to self-representation. *See Arnold v. United States,* 414 F.2d 1056 (9th Cir.1969), *cert. denied,* 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970).

To transform the specific evidentiary observation in *Jackson* into an expansive general holding that a defendant must not only clearly and unequivocally object to the court's appointment of an attorney to represent him, but must on various subsequent occasions renew his request for self-representation would not be fair to persons desiring to avail themselves of the right to self-representation, nor would such a rule be in the interest of the orderly administration of the courts. There is little purpose to a requirement that a defendant submit futile motions to revive a request that has already been firmly denied by a district judge. The rule advocated by the government would compel defendants to burden district courts with repeated assaults on settled issues, a result we surely do not seek. *Cf. United States v. France*, 886 F.2d 223, 228 (9th Cir.1989), *aff'd.* 498 U.S. 335, 111 S.Ct. 805, 112 L.Ed.2d 836 (1991).

Second, the government relies upon an erroneous reading of a case from the Eleventh Circuit to support its assertion that Arlt waived his right to self-representation. *Brown v. Wainright*, 665 F.2d 607 (11th Cir. 1982). In *Brown*, prior to a hearing on a motion to withdraw, defendant's counsel informed the court that he and the defendant had resolved their differences. In addition, the initial request was not clear and intelligent and not conclusively denied. Under these circumstances, the Eleventh Circuit held that a defendant may waive the right to self-representation if he abandons his request. *Brown*, 665 F.2d at 611–12.

The government's reliance upon *Brown* is misplaced. Although the Eleventh Circuit found that the defendant in that case had waived his right to represent himself, it anticipated and expressly rejected the argument the government makes here. The Eleventh Circuit stated that its decision should not be read

> to indicate that a defendant, to avoid waiver, must continually renew his request to represent himself even after it is conclusively denied by the trial court. *After a clear denial of the request, a defendant need not make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal.*

*Id.* at 612 (emphasis added). Thus, *Brown* contradicts, rather than supports, the government's argument.[5]

We agree with the Eleventh Circuit's approach—that after a district judge has conclusively denied a request to proceed pro se, a defendant need not make fruitless motions to that same effect or refuse to cooperate with defense counsel. As noted above, once a defendant has stated his request clearly and unequivocally and the judge has denied it in a equally clear and unequivocal fashion, the defendant is under no obligation to renew the motion. To impose such a requirement on defendants would lead to an absurd result: the constant burdening of district judges with fruitless motions designed to prove what has already been established—that the defendant desires to represent himself.[6] Once

---

**5.** The other two cases cited by the government provide even weaker support for its argument. The government relies upon *United States v. Bennett*, 539 F.2d 45 (10th Cir.1976), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976), in which the Tenth Circuit found that the defendant had equivocated about his decision to represent himself in light of his "vacillating positions [concerning self-representation or representation by an attorney] which continued until just six days before the case was set for trial." *Id.* at 51. The government can cite no evidence on the record that indicates that Arlt ever changed his mind about his decision to represent himself. Moreover, Arlt's failure to renew his motion does not resemble in any way the affirmative, repeated invocations of the right to counsel by the defendant in *Bennett*. Thus, unlike the defendant in that case, Arlt "took a clear and unequivocal position on self-representation." *Id.*

The only other case cited by the government, *United States v. Gillis*, 773 F.2d 549 (4th Cir. 1985), merely mentions *Brown v. Wainright* in passing and does not elaborate upon *Brown's* holding. *Gillis*, 773 F.2d at 559.

**6.** The justifications for our conclusions are similar to those supporting our decision in *Brown v. AVEMCO Inv. Corp.*, 603 F.2d 1367, 1370–71 (9th Cir.1979), in which we held that a party need not make an objection to jury instructions prior to jury deliberations to preserve the issue on appeal when the party has "made its opposition clear to the court and it is obvious that further objection would be unavailing." *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1430–31 (9th Cir.1986). Our reasoning in *AVEMCO Inv. Corp.* is equally applicable to the case at hand: "further objection ... would have been not only unavailing but wasteful of the

the defendant has met his burden of making a clear and unequivocal request, he is entitled to accept the judge's ruling as final and to take all proper steps he deems necessary to obtain the best possible defense. Accordingly, a defendant may select counsel of his own choosing to represent him in place of the attorney appointed by the court without forfeiting his claim that he was denied the right to represent himself. In short, neither the filing of a motion to substitute counsel nor a failure to renew a motion for self-representation constitutes a waiver of Arlt's rights.

### D. *Prejudicial Error*

 The district judge compelled Arlt to accept a court-appointed attorney against his will and in doing so denied his constitutional right to self-representation. *Faretta v. California,* 422 U.S. 806, 836, 95 S.Ct. 2525, 2541–42, 45 L.Ed.2d 562 (1975). The improper denial of this right is *"per se* prejudicial error" and thus requires automatic reversal of a criminal conviction. *Savage v. Estelle,* 924 F.2d 1459, 1466 (9th Cir.1990), *cert. denied,* 501 U.S. 1255, 111 S.Ct. 2900, 115 L.Ed.2d 1064 (1991); *see also Adams v. Carroll,* 875 F.2d 1441, 1445 (9th Cir.1989) ("The denial of the right to self-representation is not amenable to harmless error analysis."). Thus, we must reverse and remand for a new trial.

### CONCLUSION

We find that Arlt's request to represent himself was timely, clear, unequivocal, and informed. We hold that the district judge erred in denying his motion to proceed pro se on the ground that he lacked the legal skills necessary to represent himself in an adequate fashion. Contrary to the court's ruling, under *Godinez* that is clearly not the test. Arlt was competent to waive his right to counsel and handle his own defense. We also hold that, once Arlt's request was clearly made and conclusively denied, his self-representation right was not forfeited by virtue of his motion to substitute counsel or his failure to renew his request for self-representation

court's time" and would amount to a "pointless formality." *AVEMCO Inv. Corp.,* 603 F.2d at 1370–71.

at the hearing on that motion. Because the district judge's erroneous denial of Arlt's request to represent himself was *per se* prejudicial, we reverse and remand for a new trial.

### REVERSED AND REMANDED.